**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SAM CHINN,**

                                    **Petitioner,**


                                                                    **9:11-CV-0376**
                    **v.**                                          **(TJM)**

**M. BRADT, Superintendent,**

                                    **Respondent.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PETITIONER:**

**SAM CHINN**
Petitioner, _pro se_
No. 97-B-1683
Attica Correctional Facility
Box 149
Attica, NY 14011

**FOR THE RESPONDENT:**

**ERIC T. SCHNEIDERMAN**                      **LISA E. FLEISCHMANN, ESQ.**
Attorney General for the                      Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

**THOMAS J. MCAVOY**
**Senior United States District Judge**

                    <u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.      BACKGROUND**

        **A.      <u>State Court Proceedings</u>**

        The records supplied to this Court establish that an Onondaga County Grand Jury returned

an indictment against petitioner, *pro se* Sam Chinn which charged him with murder in the second degree, contrary to New York Penal Law ("Penal Law") § 125.25(1); two counts of murder in the first degree, in violation of Penal Law § 125.27(1)(a)(v) and (b), and § 125.27(1)(a)(viii) and (b); and criminal possession of a weapon in the third degree, contrary to Penal Law § 265.02(1).  *See* Dkt. No. 18-1 at 6-7 ("Indictment").  Thereafter, the Onondaga County District Attorney ("District Attorney") filed a notice of intent to seek the death penalty against petitioner.  Dkt. No. 18-1 at 47.

On July 2, 1997, pursuant to a negotiated plea agreement, petitioner appeared before Onondaga County Court Judge J. Kevin Mulroy and pleaded guilty to one count each of murder in the first degree and murder in the second degree, in satisfaction of all charges brought against him in the Indictment.  Dkt. No. 12-1.  On July 23, 1997, petitioner was sentenced by the trial court in accordance with the terms of the plea agreement to concurrent prison terms of life without parole on the first degree murder conviction, and twenty-five years to life on the second degree murder conviction.  Dkt. No. 12-2 at 4.

On August 20, 1997, petitioner filed a Notice of Appeal with the Onondaga County Court. Dkt. No. 12-3.  Thereafter, in an order dated May 19, 1998, the New York State, Supreme Court, Appellate Division, Fourth Department granted petitioner's applications to prosecute his appeal *in forma pauperis* and *pro se*, and ordered the Onondaga County Clerk's Office ("Onondaga County Clerk") to provide petitioner with copies of all papers, including transcripts, filed with the Onondaga County Clerk which related to that criminal matter.  Dkt. No. 12-6 ("May, 1998 Order"). Pursuant to that order, the Onondaga County Clerk was specifically directed to provide petitioner with "copies of all papers and transcript[s] of stenographic minutes . . . of all proceedings had and filed in said Clerk's Office."  *Id.*

Petitioner did not perfect that appeal, however, and on November 21, 2006, he filed a *pro se* motion pursuant to New York's Criminal Procedure Law Section 440.10 in which he sought to vacate the judgment of conviction based upon his claims that, among other things: (i) his guilty plea was not knowingly, voluntarily, or intelligently made; (ii) his conviction was the product of misconduct on the part of the police, the prosecutor, and the trial court; and (iii) he received the ineffective assistance of counsel.  Dkt. No. 12-8.  The District Attorney opposed that motion, Dkt. No. 12-11, and in an Order dated April 27, 2007, Onondaga County Court Judge William D. Walsh denied petitioner's motion in its entirety.  Dkt. No. 12-12 ("April, 2007 Order").  In that Order, the county court noted that petitioner had:  "filed and served a timely Notice of Appeal on August 20, 1997, and ha[d] yet to perfect that appeal.  Inasmuch as the [petitioner's] claims rely heavily upon the record, the instant motion must be denied."[1]  April, 2007 Order at 1.  By application dated May 17, 2007, petitioner sought leave to appeal the April, 2007 Order, and also requested that the Appellate Division consolidate petitioner's appeal of that Order with his pending direct appeal.  Dkt. No. 17.  That application was opposed by the District Attorney, Dkt. No. 17-1, and on June 26, 2007, the Appellate Division denied petitioner's application.  Dkt. No. 17-2.

On or about August 11, 2008, petitioner filed a *pro se* brief and record on appeal in the Fourth Department, and served a copy of his *pro se* brief on the District Attorney.[2]  *See* Dkt. Nos. 17-5; 19-8 at ¶ 5.  However, on August 20, 2008, those submissions were returned to petitioner by the Appellate Division, which noted, *inter alia*, that his submissions did "not contain a stipulation to

---

[1]  That court also found petitioner's claim of ineffective assistance of counsel to be "directly contradicted by the plea minutes."  April, 2007 Order at 2.

[2]  This Court was not provided with a copy of the papers submitted by petitioner on August 11, 2008.

3

the contents of the record or an order settling the record." Dkt. No. 17-5.[3]

On June 1, 2009, the District Attorney moved to dismiss petitioner's appeal, based in part on his failure to perfect that appeal for over eleven years.  Dkt. No. 17-6.  That application was opposed by petitioner, Dkt. No. 17-8, and on July 28, 2009, the Appellate Division conditionally granted that application and ordered the dismissal of the appeal "unless the appeal is perfected on or before November 25, 2009." Dkt. No. 17-9.  Petitioner thereafter sought and received additional extensions of that deadline from the Appellate Division, the last of which extended petitioner's deadline for perfecting his appeal to January 17, 2012.  Dkt. No. 19-19.[4]

The record further reflects that on September 1, 2009, petitioner filed a motion seeking to settle the record on appeal with the Onondaga County Court.[5]  Dkt. No. 17-10.  On October 9, 2009, the District Attorney filed a response to petitioner's application in which the District Attorney objected to the settlement of the record in the manner proposed by petitioner.  Dkt. No. 18-3.  On December 21, 2009, Judge Walsh issued a Decision/Order in which that court settled the record and discussed in detail the items that were to be included in the record on appeal.  Dkt. No. 18-5 ("December, 2009 Order").

On May 25, 2010, petitioner filed a petition pursuant to New York's Civil Practice Law and Rules ("CPLR"), Article 78, in Onondaga County Supreme Court, requesting that such court deem

---

[3]  The Appellate Division also noted in that order that petitioner's appellate brief exceeded the seventy page limit allowed by that court's rules.  Dkt. No. 17-5.

[4]  Although it is unclear to this Court whether any further extensions of that deadline have been sought and/or received by petitioner, nothing filed herein suggests that petitioner's appeal has been dismissed by the Appellate Division.

[5]  Petitioner had previously submitted an application seeking a "reconstruction hearing" and which also sought to "settle the record," however that application was denied on October 18, 1999 by County Court Judge James T. King.  Dkt. No. 17-10 at 18.

"abandon[ed] and not enforceable" decisions or orders that were apparently referenced in the

December, 2009 Order settling the record but which, according to the petitioner, did not "appear on

the County Court Clerk's list as filed."  Dkt. No. 18-6 at 3-4.  Petitioner alternatively requested in

that application that the District Attorney be directed to provide petitioner with a copy of all items

contained in the "appeal record" that had not been previously provided to petitioner.  *Id.* at 3.  In

response to that application, Acting Onondaga County Supreme Court Justice John J. Brunetti sent a

letter to petitioner in which the court requested that petitioner specifically inform chambers as to

what he was requesting that the court "order the District Attorney's Office to do;" and for the legal

authority supporting petitioner's request.  Dkt. No. 18-8.  The petitioner thereafter filed responses to

the trial court's inquiry, Dkt. Nos. 18-9, 18-10, and on July 12, 2010, Justice Brunetti issued a

Decision/Order/Judgment in which he determined that petitioner could not obtain the relief he

sought by way of an Article 78 proceeding, and therefore denied the application.  Dkt. No. 18-11

("July, 2010 Order").  Petitioner's request to appeal that decision to the Appellate Division was

denied by that court in its order entered September 20, 2010.  Dkt. No. 19-2 ("September, 2010

Order").  On October 14, 2010, petitioner filed an application with New York's Court of Appeals in

which he sought leave to appeal the September, 2010 Order.  Dkt. No. 19-3.  On December 14,

2010, New York's Court of Appeals dismissed petitioner's leave application.  Dkt. No. 19-4.

### B. This Action

Petitioner commenced this action by filing a habeas corpus petition pursuant to 28 U.S.C. §

2254 on April 1, 2011.  *See* Dkt. No. 1 at 13.  Since that pleading did not comply with the Federal

Rules of Civil Procedure and the Rules Governing Section 2254 cases in the United States District

Courts, on May 3, 2011, this Court directed petitioner to file an amended pleading if he wished to

proceed with this action.  Dkt. No. 6.  Petitioner filed that amended petition on May 26, 2011.  Dkt. No. 7 ("Am. Pet.").

In his amended pleading, petitioner does not challenge his murder convictions, but instead asserts various claims related to his failure to perfect his appeal concerning those convictions. Specifically, in his initial ground, petitioner asserts that his direct appeal is subject to dismissal by the Appellate Division due to the misconduct of the "Onondaga County Justice System" and the "New York State Courts."  Am. Pet., Ground One.  He argues that notwithstanding the fact that the Appellate Division granted him permission to pursue his appeal, he was "only provided with a set of transcripts;" he did not receive copies of "Orders, Motions, and Replies" filed in the related criminal matter.  *Id.*  In his second ground, petitioner requests that this Court direct the Appellate Division to consider petitioner's appeal of the July, 2010 Order, and also appears to argue that Justice Brunetti erred when he concluded, in his July, 2010 Order, that such court did not have the authority to grant petitioner the relief he sought under Article 78.  Am. Pet., Ground Two.  That claim also appears to seek an order from this Court directing either the Onondaga County Court or the Onondaga County Clerk to provide petitioner with all materials he believes he needs in order to pursue his direct appeal.  *Id.*  In his third ground, petitioner argues that New York's Court of Appeals wrongfully denied his October 14, 2010 application seeking leave to appeal the September, 2010 Order, and seeks an order from this Court directing New York's Court of Appeals to consider various claims asserted by petitioner in his leave application.  Am. Pet., Ground Three.  In his final ground, petitioner claims that Justice Brunetti "violated/nullified [petitioner's] right[]" to pursue his direct appeal when that court denied petitioner's Article 78 Petition.  Am. Pet., Ground Four.

On September 1, 2011, the Office of the Attorney General for the State of New York, acting

6

on respondent's behalf, filed a response in opposition to petitioner's amended pleading.  *See* Dkt.

No. 11.  Respondent attached a memorandum of law in opposition to such petition to his response,

Dkt. No. 11-1, and also provided this Court with various state court records relating to the criminal

proceedings referenced by petitioner in this action.  *See* Dkt. Nos. 12, 17-19.

     This matter is currently before this Court for disposition.

## II.    DISCUSSION

### A.    <u>Ground One</u>

     In his initial ground, petitioner appears to argue that he has been denied his right to pursue

his appeal due to the misconduct of various entities within Onondaga County and the New York

State court system.  Am. Pet., Ground One.

     It is well-settled that "a discriminatory denial of the statutory right of appeal is a violation of

the Equal Protection Clause of the Fourteenth Amendment." *Dowd v. U.S. ex rel. Cook*, 340 U.S.

206, 208 (1951) (citation omitted).  The appellate procedure provided by a State must "affor[d]

adequate and effective appellate review to indigent defendants," a threshold that is met where the

procedure "reasonably ensures that an indigent's appeal will be resolved in a way that is related to

the merit of that appeal." *Smith v. Robbins*, 528 U.S. 259, 276-77 (2000) (citations and footnote

omitted); *see also Quinones v. New York State Division of Parole*, No. 07 CIV. 8633, 2008 WL

2276540, at *4 (S.D.N.Y. June 2, 2008) (citing *Robbins*).  Additionally, a State must provide an

indigent party with a "record of sufficient completeness to permit proper consideration of [his]

claims." *Draper v. Washington*, 372 U.S. 487, 499 (1963) (internal quotation marks omitted).

However, "[a] 'record of sufficient completeness' does not translate automatically into a complete

verbatim transcript." *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971).

In order to properly consider petitioner's initial ground, the Court reviews the record to ascertain to what extent he has been provided materials necessary for him to pursue his appeal.

The record reflects that after the Appellate Division issued its May, 1998 Order granting petitioner's application to proceed with his appeal *pro se*, the Onondaga County Clerk sent a letter to petitioner dated October 6, 1998 which enclosed "a copy of all the material in [his] file" that was maintained by that office, which included copies of transcripts contained in his criminal trial.  *See* Dkt. No. 12-7; *see also* Am. Pet. at 7 (petitioner acknowledging that he received "a set of transcripts" from the Onondaga County Clerk).  By letter dated August 29, 2000, petitioner was also provided copies of "all the discovery materials" that related to petitioner which were included in the files of the Capital Defender's Office.  Dkt. No. 12-9 at 129.  On November 26, 2001, that office provided petitioner with other documents in its possession, including the notification filed by the District Attorney of his intent of seek the death penalty, an order to show cause concerning the prosecution's request that petitioner submit to fingerprinting, and copies of letters exchanged between petitioner's attorneys and the District Attorney's office regarding discovery material.  Dkt. No. 12-9 at 145.  Additionally, in an order issued by the Appellate Division on January 25, 2011 which granted petitioner an extension of time within which to perfect his appeal, that court specifically advised him that he could "move for the production of evidence and necessary documentation for the perfection of his appeal before Onondaga County Court."  *See* Dkt. No. 19-17 ("January, 2011 Order") at 1.  Thus, the record firmly establishes that petitioner has been provided with copies of all materials contained in the Onondaga County Clerk's file concerning petitioner, as well as various other documents that were in the possession of defense counsel.  Furthermore, in its January, 2011 Order, the Appellate Division specifically noted that petitioner had the right to seek

the production of any other materials necessary for him to perfect his appeal.  January, 2011 Order at 1.  Nothing before this Court suggests – much less establishes – that petitioner has been denied his right to pursue his appeal of the convictions referenced in his petition, or that the manner in which New York's appellate procedure has operated with respect to him has not reasonably ensured that his appeal can be resolved in a manner consistent with his constitutional rights.  Therefore, his initial ground for relief is denied.

**B.**     **Grounds Two and Three**

In his second ground, petitioner seems to claim that Justice Brunetti erred when he concluded in his July, 2010 Order that petitioner could not obtain the relief he sought in his Article 78 Petition by way of a proceeding brought pursuant to that statute.  Am. Pet., Ground Two.  He further contends that the Appellate Division wrongfully denied petitioner's application seeking leave to appeal Justice Brunetti's July, 2010 Order.  Am. Pet., Ground Two.  Petitioner's third ground for relief similarly argues that New York's Court of Appeals improperly denied petitioner permission to appeal the Appellate Division's September, 2010 Order.[6]  Am. Pet., Ground Three.

The aspect of petitioner's second ground which claims that Justice Brunetti wrongfully determined that petitioner was not entitled to the relief he sought by way of an Article 78 Petition, as well as the portion of his third ground in which he claims that New York's Court of Appeals wrongfully denied petitioner's application for review under N.Y.Ct.Rules, § 500.11, appears to overlook the fact that "federal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." *DiGuglielmo v. Smith*, 366

---

[6]  Petitioner sought that review pursuant Section 500.11 of New York Court of Appeals Rules of Practice, which affords that court alternative procedures for selecting cases for discretionary review.  *See* Dkt. No. 19-3 at 5-6; *see also* N.Y.Ct.Rules, § 500.11.

F.3d 130, 137 (2d Cir. 2004) (quoting *Davis v. Strack*, 270 F.3d 111, 123 n.4 (2d Cir. 2001)). Petitioner has wholly failed to establish that Justice Brunetti's interpretation of the scope of Article 78 in his July, 2010 Order is unconstitutional.  Therefore, this Court must deny this aspect of petitioner's second ground.  Since petitioner has similarly failed to demonstrate that the decision by New York's Court of Appeals to deny petitioner's leave application concerning the Appellate Division's September, 2010 Order was, in any way, improper, this aspect of his third ground is denied.

    In recognition of petitioner's *pro* se status, the Court also liberally views the claims asserted by petitioner in his second and third grounds as requests that this Court grant petitioner mandamus relief that directs:  (i) the Appellate Division to consider petitioner's appeal of the denial of his Article 78 Petition (Am. Pet., Ground Two); and/or (iii) New York's Court of Appeals to consider petitioner's appeal of the September, 2010 Order.  Am. Pet., Ground Three.  However, as the court noted in *Rahman v. McElroy*, 884 F.Supp. 782 (S.D.N.Y. 1995):

> "the common-law writ of mandamus . . . is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty."

*Rahman*, 884 F.Supp. at 787 (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)) (other citation omitted); *cf. Huli v. Way*, 393 F.Supp.2d 266, 269-70 (S.D.N.Y. 2005) (in interpreting the federal mandamus statute, 28 U.S.C. § 1361, court observed that mandamus relief if only available "where the government official or agency owes the petitioner a 'clear nondiscretionary duty'") (quoting *Heckler*, 466 U.S. at 616).  Since the actions of the Appellate Division and New York's Court of Appeals about which petitioner now complains necessarily involved ***discretionary*** functions of

10

those respective courts, rather than non-discretionary duties, petitioner is plainly not entitled to the relief he seeks in such grounds if viewed as claims seeking mandamus relief.[7]

Moreover, these grounds appear to seek an order from this Court directing a state court official to perform an action on behalf of the petitioner.  Specifically, petitioner's second ground may be broadly viewed as seeking an order from this Court directing state officials to provide petitioner with all materials he claims he needs in order to pursue his direct appeal.  *See* Am. Pet., Ground Two.  Both his second and third grounds may be liberally construed as seeking an order from this Court directing the Appellate Division and New York's Court of Appeals to grant the applications for discretionary review filed by petitioner in those respective courts.  *Id.*, Grounds Two, Three.  However, it has been properly observed that "[d]istrict courts are not authorized . . . to compel a state or state officials to perform a particular duty."  *Reyes v. New York*, No. 08-CV-1679, 2008 WL 2120783, at *1 (E.D.N.Y. May 19, 2008) (citing *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988)) (other citation omitted).  This Court therefore cannot properly direct any state official to provide petitioner with documents he believes are necessary to perfect his appeal, nor may it direct judges or officials at either the Appellate Division or the New York Court of Appeals to grant petitioner's applications for discretionary review concerning those courts.

In light of the foregoing, petitioner's second and third grounds for relief are denied.

## C.     <u>Ground Four</u>

In his final ground, petitioner claims that Justice Brunetti "violated/nullified [petitioner's]

---

[7]   It is of course well established that "a federal court, although it properly has jurisdiction, in the interest of comity, should abstain from hearing a case that would interfere with an on-going state criminal proceeding."  *Kunz v. New York State Commission on Judicial Conduct et al.,* 356 F.Supp.2d 188, 192 (N.D.N.Y. 2005) (Kahn, J.) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

right[]" to pursue his direct appeal when that court issued the July, 2010 Order denying petitioner's Article 78 Petition.  Am. Pet., Ground Four.  Thus, a brief review of Justice Brunetti's decision denying petitioner's Article 78 Petition is warranted.

In his July, 2010 Order, Justice Brunetti held:

> The Petitioner seeks to employ the procedures set forth in Article 78 of the Civil Practice Law and Rules as a substitute for, or as an additional remedy for, the record on appeal provisions contained in the Criminal Procedure Law and the Rules of the Fourth Department. Because of that fact, the court concludes that Article 78 relief is not available to the Petitioner.

July, 2010 Order at 1 (footnotes omitted).  Thus, that order plainly did not preclude petitioner from perfecting and/or pursuing his criminal appeal, but instead merely advised petitioner that the relief he sought was not available pursuant to Article 78 of the CPLR.  Furthermore, ***subsequent to*** that decision of Justice Brunetti, the Appellate Division specifically advised petitioner of his right to seek the production of evidence and documents necessary for him to perfect his appeal.  January, 2011 Order at 1.

Petitioner has wholly failed to demonstrate that the actions of Justice Brunetti in issuing the July, 2010 Order "violated/nullified" petitioner's appellate rights, or otherwise prevented him from properly perfecting and/or pursuing his appeal of the criminal convictions referenced in this action. Therefore, this final ground in the petition is denied.

## III.   CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part, as follows:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .

28 U.S.C. § 2253(c)(1)(A).[8]  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

      **ACCORDINGLY**, it is

      **ORDERED** that petitioner's Amended Petition (Dkt. No. 7) is **<u>DENIED</u>** and **<u>DISMISSED</u>**; and it is further

      **ORDERED** that no Certificate of Appealability shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c); and it is further

      **ORDERED** that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated:June 19, 2012

Thomas J. McAvoy
Senior, U.S. District Judge

---

[8]  Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).